## UNITED STATES v. KILGORE.
### No. 2026.

District Court, W. D. Oklahoma.
March 31, 1939.

Wade H. Loofbourrow, Asst. U. S. Atty., of Oklahoma City, Okl.

A. M. Beets, of Oklahoma City, Okl. (Beets, Zeman & Beets, of Oklahoma City, Okl.), for defendant.

VAUGHT, District Judge.

Since the trial of this cause and on the 18th day of January, 1939, the original defendant, E. P. Kilgore, departed this life and thereafter, Elizabeth B. Kilgore was duly appointed administratrix of the estate of the said E. P. Kilgore, deceased. The said Elizabeth B. Kilgore, as administratrix of said estate, filed her motion for the revivor of this action in her name and on the 27th day of March, 1939 the said action was revived and now stands in the name of Elizabeth B. Kilgore as defendant.

Under the stipulated facts, the East half of the South West quarter of Section twenty-four in Township ten North of Range three East of Indian Meridian in Oklahoma Territory, containing eighty

acres, was on the 6th day of October, 1894 allotted to Tho-kah-qua-muck, an Indian on the Kickapoo Reservation in Oklahoma Territory. The patent issued on said date contained express restrictions for a period of twenty-five years and a proviso that the President of the United States may, in his discretion, extend the said period. On February 27, 1919, the restricted period was extended for a period of five years by Woodrow Wilson, as President of the United States; thereafter, on June 19, 1924, Calvin Coolidge, as President of the United States, extended said restricted period for an. additional period of ten years; and, thereafter, on December 15, 1933, the said restricted period was extended for a further period of ten years by Franklin D. Roosevelt, as President of the United States.

It is stipulated that Tho-kah-qua-muck, the said allottee, died in the year 1904 in the Republic of Mexico, being at said time a nonresident of the United States and a resident of the Republic of Mexico. She left as her sole heir her daughter, Pah-ka-ta-mo-quah, who at said time was living with her mother in the Republic of Mexico and was a nonresident of the United States and was never allotted land in Oklahoma or Indian Territory.

It is further stipulated that Pah-ka-ta-mo-quah, as the only child and the sole heir of her mother, Tho-kah-qua-muck, inherited the land described herein, which had been previously allotted to her mother.

. It is further stipulated that Pah-ka-ta-mo-quah, at the time of her mother's death, prior thereto, and up to and including the 16th day of February, 1926, was a nonresident of the United States and was a resident of the Republic of Mexico.

It is further stipulated that the Department of Interior of the United States through the Commissioner of Indian Affairs made a finding on April 15, 1913, that Tho-kah-qua-muck, deceased Indian of the Shawnee Agency, and the Mexican Kickapoo Tribe, allottee No. 272, who was allotted the East half of the South West quarter of Section twenty four in Township ten North, Range three East of the Indian Meridian in Oklahoma Territory, under the Act of March 3, 1893, 27 Stat. 557 and original trust patent issued October 6, 1894, died in the Republic of Mexico in the summer of 1904, age twenty three years; that she had married in 1896 and was divorced by Indian custom January, 1897; that said allottee was unmarried at the time of her death and was survived by a daughter, Pah-ka-ta-mo-quah, who was the sole heir of said deceased allottee, and said finding furthermore declared Pah-ka-ta-mo-quah the sole heir of the deceased allottee and entitled to the entire estate.

On the 16th of February, 1926, Pah-ka-ta-mo-quah executed a warranty deed to one L. P. Wheeler, Tulsa County, State of Oklahoma, which warranty deed stated on its face that the grantor, Pah-ka-ta-mo-quah, was a nonresident of the United States and after June 2, 1906, was known as a Mexican Kickapoo Indian, heir of Tho-kah-qua-muck. Thereafter, on the 16th of April, 1926, said L. P. Wheeler conveyed the above described real estate to E. P. Kilgore, the original defendant in this case. The record discloses that a valuable consideration was paid for said warranty deed to the Indian heir.

The case involves the construction of a portion of the Act of June 21, 1906, which is as follows: "All restrictions as to sale and incumbrance of all lands, inherited and otherwise, of all adult Kickapoo Indians, and of all Shawnee, Delaware, Caddo, and Wichita Indians who have heretofore been or are now known as Indians of said tribes, affiliating with said Kickapoo Indians now or hereafter nonresident in the United States, *who have been allotted land in Oklahoma or Indian Territory are hereby removed:* Provided, That any such Indian allottee who is a nonresident of the United States may lease his allotment without restriction for a period not exceeding five years: Provided further, That the parent or the person next of kin having the care and custody of a minor allottee may lease the allotment of said minor as herein provided, except that no such lease shall extend beyond the minority of said allottee." 34 Stat. at Large, 325, 363. (Emphasis supplied.)

This section of the statute has been construed in two cases that were tried in this court and appealed to the Tenth Circuit Court of Appeals, to-wit: United States v. Estill et al., 10 Cir., 62 F.2d 620 and United States v. Reily, 10 Cir., 62 F.2d 621. The latter case was appealed to the Supreme Court of the United States and was there reversed in United States v. Reily, 290 U.S. 33, 54 S.Ct. 41, 44, 78 L.Ed.

154. Since the Supreme Court in the Reily case refers to the Estill case, a brief review of these cases may be necessary.

In the Estill case, the allottee, a Kickapoo, removed to the Republic of Mexico and resided there for many years prior to his death in 1905. He left surviving him, his widow and a son by a divorced wife, both residents of Mexico. The question was whether or not the heirs of this allottee had a right to convey this property as unrestricted property. The trial court held that this was unrestricted property and that the conveyances were valid, which was sustained by the Circuit Court of Appeals for the Tenth Circuit, from which judgment no appeal was taken.

In the Reily case, however, a different state of facts was presented. The Kickapoo allottee was a resident of the Republic of Mexico at the time the Act of 1906 was passed. She returned to Oklahoma in 1927 where she died in 1929 leaving a son as her only heir, who was living in Oklahoma prior to and at the time of his mother's death. In that case the trial court and the Circuit Court of Appeals held that the restrictions were removed by the removal of the mother to Mexico and her residence there until a short time before her death.

In discussing the Estill case, the Supreme Court said: "That suit [U. S. v. Estill] involved a conveyance by heirs of a Kickapoo who had received an allotment in the Oklahoma reservation in 1894 and had died in Mexico in 1905. The heirs were Kickapoos who had received allotments in the same reservation in their own right. The court deemed their residence material and gave the matter particular attention. It said: 'The lower court also found, and the proof sustains it, that I-nesh-kin and Nah-she-pe-eth (the heirs) "were adults and residing in the Republic of Mexico on the twenty-first day of June, 1906, and thereafter." ' The conveyance was made on a later date. Thus the *heirs' inherited ownership and their residence in Mexico coincided before the conveyance was made*. On the facts recited the court ruled that the case came within the act, and accordingly sustained the conveyance." (Emphasis supplied.)

With reference to the Reily case, the court said: "But the real fact shown by the evidence, found by the District Court, and not questioned by the defendant, is that the son, although at an earlier time a resident of Mexico, became an actual resident of the Kickapoo reservation in Oklahoma in 1920, and resided there continuously thereafter. The mother, the allottee, died in 1929. Then, and not before, the son became her heir and inherited the land. *At no time with him did ownership of the land and nonresidence in the United States coincide*. That he had been a nonresident for several years ending nine years before the mother died is not material. During that period he had no right in the land and the restriction was of no concern to him. When later on he inherited the land *nonresidence, the chief condition on which the act made removal of the restriction to depend*, was wanting. He was then and thereafter an Indian, resident in the United States among the people of his tribe, and holding the land under the restricted trust patent given to his mother." (Emphasis supplied.)

The distinction, therefore, between the Estill case and the Reily case was that in the Estill case the allottee became a resident of the Republic of Mexico and continued to be a resident there until his death. His heirs were also residents of the Republic of Mexico and continued to live there and were residents of Mexico at the time of the execution of the deed to the land in Oklahoma. In the Reily case, the mother, the allottee, was a resident of the Republic of Mexico but returned to Oklahoma in 1927 and died there in 1929 but at the time of her death was a resident of Mexico but her heir was a resident of Oklahoma and had been since 1920.

In the case at bar, the allottee died in the Republic of Mexico in 1904, two years before the passage of the Act of 1906. Her daughter was her sole heir and was also a resident of the Republic of Mexico and there is nothing in the record to indicate that she was ever a resident of Oklahoma. At least the record is clear that for some years prior to her mother's death and up until 1926, the date of the warranty deed to Wheeler, the daughter was a resident of the Republic of Mexico. So, in the language of the Supreme Court, "the heirs' inherited ownership and their residence in Mexico coincided before the conveyance was made." The Supreme Court said further: "When later on he inherited the land nonresidence, *the chief condition on which the act made removal of the restriction to depend, was wanting*." (Emphasis supplied.)

4

Nonresidence and inheritance of the land coincided. That is, at the time of the allottee's death both the allottee and the heir were nonresidents of the United States and were residents of the Republic of Mexico.

It is contended by the government that restrictions would not be removed unless the heirs of the nonresident allottees were those "who have been allotted land in Oklahoma or Indian Territory."

It is at least a matter of some conjecture and certainly of great curiosity as to why the restrictions would be removed in behalf of heirs who had been allottees, and would not be removed in behalf of heirs who had not been allottees. The contention is not reasonable. In the judgment of the court, Congress intended the clause, "who have been allotted land in Oklahoma or Indian Territory", to refer to Indians. who had become residents of the Republic of Mexico, because the Act deals with the removal of restrictions on certain tribes of Indians who had become residents of the Republic of Mexico and who had "been allotted land in Oklahoma or Indian Territory." The clause, "who have been allotted land in Oklahoma or Indian Territory," refers to the allottees and not to the heirs.

The Supreme Court in the Reily case, supra, referring to that portion of the Act of 1906 above quoted, said: "Although inartificially framed, the act taken as a whole comports with this view quite as well if not better than with the other, and due regard for the status and interests of the Indians affected, which always are to be considered in construing such laws, * * *."

It is therefore the judgment of this court that, since the allottee in this case, prior to the passage of the Act of 1906, was a resident of the Republic of Mexico and so remained until her death in 1904 and that her sole heir was, prior to her mother's death, a resident of the Republic of Mexico and continued to reside there until 1926 when she executed a warranty deed to L. P. Wheeler, all of the conditions of the Act were met, the restrictions on the allotment were removed, and the deed to Wheeler constituted a valid conveyance.

Judgment will be rendered for the defendant. Findings of fact, conclusions of law and a form of decree, consistent with this opinion, may be submitted. An exception is allowed.